IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATRICIA WILLIAMS,

                        OPINION AND ORDER

        Plaintiff,

                        13-cv-794-bbc

    v.

WISCONSIN DEPARTMENT OF
WORKFORCE DEVELOPMENT,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        The parties in this case have finished briefing defendant Wisconsin Department of Workforce Development's motion for summary judgment with respect to plaintiff Patricia Williams's claim that defendant paid her less than similarly situated males, in violation of the Equal Pay Act. Dkt. #46. Because plaintiff has not adduced evidence that defendant paid any similarly situated males more than her, I am granting defendant's motion for summary judgment.

        The remaining question is whether plaintiff has a viable claim under the Fair Labor Standards Act. Because the answer to that question is unclear, I am directing plaintiff to submit supplemental materials regarding the scope of that claim. (Plaintiff filed a motion for leave to file a surreply brief on this issue, dkt. #58, but I am denying that motion as unnecessary because her proposed brief simply repeats her argument from her opposition brief.)

1

From the facts proposed by the parties, I find that the following are undisputed.

UNDISPUTED FACTS

A.  Plaintiff's Work for Defendant

From 2010 to 2012, plaintiff Patricia Williams worked as a vendor for defendant Wisconsin Department of Workforce Development.  Vendors are contracted by the department to provide job development and job coaching services.

The department keeps a list of vendors that can provide the services.  If a client needs a service, defendant will give the client the names of several  job developers or job coaches in the area who will work directly with the individual.

Each vendor signs a contract to provide services and agrees to the fee schedule and payment terms.  The agreement is for one year but can be canceled at any time by either the vendor or the department.  The vendor is not required to work exclusively as a vendor for the department.

 The contract with the vendors provides specific guidance on how the services should be provided and the department's supervisors provide direction and review, but the department does not provide the vendor training on how to be a job developer or coach, how to make placements or how to perform any other aspect of the job duties, other than optional service provider training and updates of departmental policies at "vendor meetings."

The vendors chosen are paid according to a fee schedule after they have completed their work with a particular individual.  Under federal regulations, the department must

establish and maintain documentation that reflects the services provided and the provider. Payment for services will not be made unless the vendor completes acceptable service, meets attendance and meeting requirements and submits a report. The vendor must meet certain threshold requirements as described in a Service Agreement. The fee schedule is based on outcomes.

The department does not provide offices or meeting sites to vendors to conduct their business, but it does advise its vendors of acceptable meeting locations. As a general rule, vendors provide their own business equipment, supplies, stationery and transportation, although they may be reimbursed for travel. As a vendor, plaintiff was expected to meet with consumers as often and as regularly as needed to impart information about employer expectations, skill building, job searches and interviewing techniques. She was to have target employment expectations, lists of employer contacts, an understanding of employment barriers and strategies to address these matters.

Plaintiff's responsibilities included managing relationships with her clients' potential employer, allocating resources and managing budgets. She did not supervise other employees, develop statewide policies and procedures, manage a departmental budget or allocate resources. She did not coordinate Division of Vocational Rehabilitation programs with other divisions of the department, other vendors or private or public agencies. Before becoming a vendor, plaintiff had minimal experience in working with minority, disabled, ex-offender clientele providing career counseling, driver's license restoration, post-employment job training and job placement and retention.

During her time as a vendor, plaintiff provided services to 48 individuals and worked more than 100 hours each week. Her pay was based upon her contract and depended on the number of clients she served and the types of services she provided. She worked under the same fee schedule as the other vendors: she was paid a flat rate ranging from $400 to $1200 per client, depending on the service provided. She purchased her own liability insurance and determined her own work load and schedule and was to provide her own equipment and supplies, although the state provided her a computer, printer and fax machine. As a non-state employee, she could do any other type of work she wanted.

Plaintiff won a vendor's contract from the department that was to begin on July 1, 2010; it was renewed in July 2011 and on May 17, 2012. It was canceled on July 10, 2012 because the department believed that plaintiff had engaged in unethical business practices, including soliciting clients from the waiting lists.

B. Male Employees

Leslie Mirkin has been employed full-time since 2007 as Director of the Workforce Development Area 10 at the Wisconsin Department of Workforce Development. Before taking this position, Mirkin had four years of experience as a supervisor of Vocational Research Counselors and eight years of experience as a vocational rehabilitation counselor. In his present job, he supervises Department of Workforce Development-Division of Vocational Rehabilitation employees, establishing operating procedures, reviewing the work of his subordinates, counseling and training his subordinates, administering programs, which

includes review of vendor/contractor performance. Approximately 50% of his time is spent on duties relating to supervising employees, including vocational research counselors; the remainder is spent on such activities as the development of statewide policies, budget preparation and monitoring, coordination of services with other divisions of the department and public and private partnerships.

OPINION

A. Equal Pay Act

Section 206(d) of the Equal Pay Act prohibits covered employers from paying employees of one sex at a rate less than the rate paid to employees of the opposite sex for equal work on jobs that require equal skill, effort and responsibility and are performed under similar working conditions. The Act does not apply to payments made pursuant to a seniority system, a merit system, a system measuring earnings by quantity or quality of production or a differential based on any factor other than sex. 29 U.S.C. § 206(d).

Defendant contends that it is unnecessary to delve into the Act's requirements because the undisputed facts show that plaintiff is not an employee within the meaning of the Act, but an independent contractor. Plaintiff takes issue with this description of her job status, contending that the evidence strongly suggests that she was an employee and that she did essentially the same work and had the same responsibilities as Leslie Mirkin.

It is not necessary to decide plaintiff's employment status in order to decide this claim. Even assuming that plaintiff was an employee (as she must have been in order to

pursue a claim under § 206(d)), the undisputed evidence adduced by defendant establishes that plaintiff and Mirkin were not similarly situated. Although plaintiff argues correctly that the court must consider the actual content of a job and not its title in determining whether one person's work required skill, effort and responsibility equal to that required by another employee's job, EEOC v. Mercy Hospital and Medical Center, 709 F.2d 1195, 1197 (7th Cir. 1983), the undisputed facts show that Mirkin's duties and responsibilities were far different from those of plaintiff. Mirkin was responsible for supervising plaintiff's work and that of other contract vendors; plaintiff had no such responsibility. She had responsibility for her clients and helping them obtain and keep jobs, but she did not oversee any other vendors or any departmental employees.

Plaintiff seems to concede that she and Mirkin did not do substantially the same work when she suggests that there might be other males that are comparators. She suggests that more discovery might disclose such males, but it is too late for plaintiff to ask for additional time for discovery. She filed this case more than a year ago; she has had ample time to take the kind of discovery she now says she needs; and the motion for summary judgment is fully briefed on this issue. She has not identified any discovery she might obtain that would show that she was similarly situated to the person (Leslie Mirkin), who established operating procedures for the vendor program and other programs, reviewed the work of his subordinates, counseled and trained those subordinates, approved vendors for contracts and reviewed vendor/contractor performance. American Needle Inc. v. National Football League, 538 F.3d 736, 740-41 (7th Cir. 2008) (if nonmoving party seeks to delay resolution of

summary judgment motion to obtain additional evidence, that party must "identify the specific evidence which [she] might have obtained from [the moving party] that would create a genuine issue" of material fact) (internal quotations omitted). I conclude that defendant is entitled to summary judgment on this claim.

### B. Fair Labor Standards Act Claim

In response to defendant's motion for summary judgment, plaintiff stated that her Equal Pay Act claim was not her only claim. Rather, she said that she also has a "wage claim" under the Fair Labor Standards Act. Because defendant did not move for summary judgment with respect to an FLSA claim, plaintiff argued that she did not need to discuss that claim. Cloe v. City of Indianapolis, 712 F.3d 1171, 1182 (7th Cir. 2013) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.") (internal quotations omitted).

Although plaintiff does not cite any language from her complaint that describes an FLSA claim, she is correct that I acknowledged in an order dated October 9, 2014, dkt. #43, that she was asserting a claim under the FLSA. Defendant did not object to the new claim at that time. Cf. Hutchins v. Clarke, 661 F.3d 947, 957-58 (7th Cir. 2011) ("[A] pleading can be constructively amended when both parties expressly or impliedly consent to the constructive amendment.").

Because I have recognized plaintiff's FLSA claim and defendant did not include that

claim in its motion for summary judgment, it would not be appropriate simply to disregard the claim as defendant suggests in its reply brief. However, plaintiff has not yet described the precise scope of that claim or identified which provision of the FLSA she believes that defendant violated and the basis for that belief. It would serve no purpose to allow the FLSA claim to proceed without some showing from plaintiff that she has a viable legal theory.

Accordingly, I will give plaintiff an opportunity to file supplemental materials in which she (1) provides a thorough description of the scope of her FLSA claim; (2) identifies the provision or provisions of the FLSA she believes that defendant violated; and (3) explains the basis for her belief that defendant violated the FLSA. Once plaintiff provides that information, I will consider whether she may proceed on her FLSA claim and, if so, what the next step should be.

For example, if plaintiff has a viable legal theory under the FLSA, I may consider the question whether plaintiff qualifies as an "employee" under the FLSA. As noted above, the parties have briefed the question whether plaintiff was an "employee" under the EPA and the parties seem to agree that the standard is identical with respect to both statutes. If plaintiff believes that the meaning of "employee" is *not* identical under both statutes, she should raise that issue in her supplemental materials.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by the Wisconsin Department of

Workforce Development, dkt. #46, is GRANTED with respect to plaintiff Patricia Williams's claim under the Equal Pay Act.

2. Plaintiff's claim for leave to file a surreply brief, dkt. #58, is DENIED.

3. With respect to plaintiff's claim under the Fair Labor Standards Act, plaintiff may have until March 12, 2015 to file and serve supplemental materials providing the following information: (a) a thorough description of the scope of her FLSA claim; (b) the provision or provisions of the FLSA she believes that defendant violated; (c) the basis for her belief that defendant violated the FLSA; and (d) whether she agrees with defendant that the meaning of "employee" is identical under both the EPA and the FLSA.

4. If plaintiff does not respond by March 12, 2015, I will construe her silence as a decision to abandon any claim she may have had under the FLSA and I will direct the clerk of court to enter judgment in defendant's favor and close this case.

Entered this 25th day of February, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge